**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**CASE NO. 21-CV-60168-RKA**

MARK MESSINA and
BERNARD MCDONALD,

      Plaintiffs,

vs.

CITY OF FORT LAUDERDALE,
FLORIDA, a Florida municipal corporation,

      Defendant.
_____/

## MOTION FOR PRELIMINARY INJUNCTION
## AND SUPPORTING MEMORANDUM OF LAW

Plaintiffs, MARK MESSINA and BERNARD MCDONALD, by and through undersigned counsel, hereby move for a preliminary injunction enjoining the Defendant, the City of Fort Lauderdale, from enforcing its Panhandling Ordinance, Section 16-82 of the Fort Lauderdale City Code, and its Solicitation Ordinance, Section 25-267 of the Fort Lauderdale City Code.   In support of this motion, Plaintiffs state the following.

## INTRODUCTION

Under Fort Lauderdale's Panhandling Ordinance, a person cannot seek financial donations at bus stops and public transportation facilities; in public transportation vehicles; at parking lots, parking garages, and parking pay stations owned or operated by the City; in parks owned or operated by the City; or within 15 feet of a sidewalk café, automatic teller machine, or an entrance or exit of a commercial or governmental building.  Section 16-82(b).   However, someone engaging in other forms of speech is not subject to these restrictions, such as a person

1

holding a sign to recruit people to join a church, or a person holding a sign decrying the bank that operates an ATM, or a person holding a sign at a bus stop stating "vote for me."

Similarly, under Fort Lauderdale's Solicitation Ordinance, persons cannot seek donations from those in vehicles along any road in the City, even if the vehicles are temporarily stopped, if the person seeking donations is carrying a sign.   Section 25-267(a), (d).  On the other hand, persons can stand by the side of the road and hold signs conveying religious or political messages without any restrictions, if donations are not being sought.

By singling out solicitation of donations for differential treatment, the Panhandling Ordinance and the Solicitation Ordinance are content-based ordinances subject to strict scrutiny. Because both Ordinances are not narrowly tailored to any compelling government interest, nor are they the least restrictive means of advancing any interest, both Ordinances are an unconstitutional restriction of free speech in violation of the First Amendment.

Plaintiffs are men who panhandle in the City, and who have been harassed by City police officers for doing so.  They wish to continue to solicit donations, and need to do so to contribute to their survival, but fear arrest for doing so.  Plaintiffs therefore seek preliminary injunctive relief enjoining enforcement of the Ordinances so that they can engage in constitutionally protected speech, and damages for the violation of their First Amendment rights.  Plaintiffs also seek a declaration that the Ordinances are facially unconstitutional, on behalf of others not before the Court who undoubtedly avoid exercising their free speech rights because they fear arrest and prosecution.

## STATEMENT OF FACTS

**A.      Section 16-82 - Panhandling Ordinance**

On May 1, 2012, the City Commission enacted Ordinance No. C-12-10, which was later codified as Section 16-82 of the Fort Lauderdale Code of Ordinances, captioned "Panhandling, begging or solicitation." (This Ordinance will be referred to hereinafter as the Panhandling Ordinance; Ordinance No. C-12-10 is attached hereto as Exhibit 1, and Section 16-82 is attached hereto as Exhibit 2). Section 16-82(a) defines "panhandling" as "[a]ny solicitation made in person requesting an immediate donation of money or other thing of value for oneself or another person or entity."

Section 16-82(b) forbids panhandling at bus stops and public transportation facilities; in public transportation vehicles; at parking lots, parking garages, and parking pay stations owned or operated by the City; in parks owned or operated by the City; within 15 feet of a sidewalk café, automatic teller machine, or an entrance or exit of a commercial or governmental building; and on all private property, unless the property owner has given permission.

Section 16-82(a) defines "aggressive panhandling, begging or solicitation" to include "[r]equesting money or something else of value after the person solicited has given a negative response to the initial request." Section 16-82(a) also defines "aggressive panhandling, begging or solicitation" to including blocking a person's passage, touching a person without permission, or engaging in conduct threatening another with "imminent bodily injury" or "commission of a criminal act" or intended to force compliance with demands. Section 16-82(c) forbids "aggressive panhandling" anywhere in the City.

Section 16-82(d) provides that the penalties for violation of Section 16-82 shall be as set forth in Section 1-6 of the Fort Lauderdale Code of Ordinances, which provides for a fine not to exceed five hundred dollars ($500.00), a term of imprisonment not to exceed sixty (60) days, or both a fine and imprisonment.

**B.      Section 25-267 - Solicitation Ordinance**

On September 16, 2014, the City Commission enacted Ordinance No. C-14-38, which was later codified as Section 25-267, Fort Lauderdale Code of Ordinances, captioned "Right-of-way solicitors and canvassers." (This Ordinance will be referred to hereinafter as the Solicitation Ordinance; Ordinance No. C-14-38 is attached hereto as Exhibit 3, and Section 25-267 is attached hereto as Exhibit 4.)  Section 25-267(a) defines "right-of-way canvasser or solicitor" as " any person who sells or offers for sale anything or service of any kind, or advertises for sale anything or service of any kind, or who seeks any donation of any kind, or who personally hands to or seeks to transmit by hand or receive by hand anything or service of any kind, whether or not payment in exchange is required or requested, to any person who operates or occupies a motor vehicle of any kind, which vehicle is engaged in travel on or within any portion of any of the streets or roadways in the city, whether or not such vehicle is temporarily stopped in the travel lanes of the road."  Section 25-267(a) adopts the definition of "right-of-way" found in Section 25-97 of the Fort Lauderdale Code of Ordinances, where "rights-of-way" are defined as "surface and space above and below any real property in which the city has an interest in law or equity, whether held in fee, or other estate or interest, or as a trustee for the public, including, but not limited to any public street, boulevard, road, highway, freeway, lane, alley, court, sidewalk, or bridge."

4

Section 25-267(b) provides that "[i]t shall be unlawful for any person to act as a right-of-way canvasser or solicitor on any portion of a public right-of-way with a functional classification of arterial on the Broward County Highway Functional Classifications Map and a Broward County Metropolitan Planning Organization Roadway 2012 Peak Level of Service (LOS) designation of D, E or F."   Section 25-267(d) provides that "[i]t is a violation of this section for any right-of-way canvasser or solicitor to hold, carry, possess or use any sign or other device of any kind, within any portion of the public right-of-way."   Thus, under Section 25-267(b) it is unlawful to be a canvasser or solicitor on City roads with certain classifications, whereas under Section 25-267(d) it is illegal to be a canvasser or solicitor on *all* roads in the City if the solicitation or canvassing involves use of a sign.   Section 25-267(d) thereby creates a more geographically expansive restriction on expression, where the canvasser or solicitor communicates not only through oral expression but also through written expression in the form of a sign.

Section 25-267(f) provides that the penalties for violation shall be as set forth in Section1-6 of the Fort Lauderdale Code of Ordinances, which provides for a fine not to exceed five hundred dollars ($500.00), a term of imprisonment not to exceed sixty (60) days, or both a fine and imprisonment.

**C.    Enforcement of the Ordinances**

Sections 16-82 and 25-267 of the Fort Lauderdale City Code have been enforced primarily against people who were soliciting for donations in public places. *See* Verified Complaint ¶ 29. On August 30, 2018, numerous civil rights organizations notified the City that Sections 16-82 and 25-267 were unconstitutional content-based restrictions on speech and requested that the City cease enforcement, repeal the ordinances, and develop constructive

approaches to the issues of homelessness and poverty. *Id.* ¶ 30*; see also* Letter (Exhibit 5). However, the City did not respond to the letter, and has persisted in enforcing the ordinances and continues to this day to arrest and cite people for asking for donations.  *See* Verified Complaint ¶¶ 31-32.  Since the beginning of 2018, well over 100 people were either arrested and taken to jail or cited with a notice to appear in court for a violation of the Ordinances, and the predominant reason for their arrests or citations was solicitation of donations.  *Id.*  ¶ 33; *see* Arrest/Citation forms (Exhibit 6).

Plaintiffs Mark Messina and Bernard McDonald are both lifelong residents of Broward County.  *See* Verified Complaint ¶¶ 7-8.  Both men are in their mid-fifties, and have physical limitations that interfere with their performing the types of manual labor that they have previously engaged in to support themselves.  *Id.*  ¶¶ 34, 42.   Messina and McDonald have peacefully engaged in panhandling in the City in order to meet their survival needs.  *Id.*  ¶¶ 35, 43.   Both have been harassed by City police officers while panhandling, and would like to seek donations more frequently than they do, but have limited their panhandling activities because they fear arrest.  *Id.*  ¶¶ 38-40, 44-45.   McDonald and Messina both stand on sidewalks, medians, swales, and edges/shoulders of streets to request donations.   *Id.*  ¶¶ 36, 43.  Messina also stands on City sidewalks near commercial areas and outdoor cafes and asks pedestrians for donations.  *Id.*  ¶ 36.

<u>**ARGUMENT**</u>

Plaintiffs are entitled to a preliminary injunction enjoining the enforcement of Sections 16-82 and 25-267.  A district court may issue preliminary injunctive relief when the plaintiff demonstrates that:  (1) there is "a substantial likelihood that [the plaintiff] will succeed later on the merits"; (2) the plaintiff "will suffer an irreparable injury absent preliminary relief"; (3) the

plaintiff's injury likely "outweighs any harm that its opponent will suffer as a result of an injunction"; and (4) preliminary relief would not "disserve the public interest." *Scott v. Roberts*, 612 F.2d 1279, 1290 (11th Cir. 2010).

## I.      Plaintiffs are Likely to Succeed on the Merits of Their First Amendment Claims

Plaintiffs are likely to succeed in showing that Sections 16-82 and 25-267 of the Fort Lauderdale Code impose unconstitutional speech restrictions, both on their face and as applied to Plaintiffs. Content-based speech restrictions are presumptively unconstitutional and subject to strict scrutiny; to survive, the government bears the burden of proving that the law is narrowly tailored to a compelling government interest and is the least restrictive means of advancing it. The Ordinances fails this test.

As a preliminary matter, Plaintiffs note that the "solicitation of charitable contributions is protected speech" under the First Amendment. *Riley v. National Federation of the Blind*, 487 U.S. 781, 789 (1988). *See also Smith v. City of Fort Lauderdale*, 177 F.3d 954, 956 (11th Cir. 1999) ("Like other charitable solicitation, begging is speech entitled to First Amendment protection."). Moreover, streets, sidewalks, and public places are considered the "archetype of a traditional public forum." *Frisby v. Schultz*, 487 U.S. 474, 480 (1988). "Traditional public fora are public areas such as streets and parks that, since 'time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.'" *Bloedorn v. Grube*, 631 F.3d 1218, 1231 (11th Cir. 2011) (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 54 (1983)). The government's ability to restrict speech in these areas is "very limited." *McCullen v. Coakley*, 573 U.S. 464, 477 (2014). In the instant case, the Solicitation Ordinance exclusively targets speech in traditional public

fora, and the reach of the Panhandling Ordinance includes locations that are traditional public fora.

    **A.**    **The Ordinances are a Content-Based Restriction of Protected Speech Under the Supreme Court's Decision in *Reed v. Town of Gilbert*.**

The Panhandling Ordinance singles out the solicitation of contributions by banning it at certain times and places and imposing certain restrictions on how it is conducted, while permitting other speech to occur without those bans and restrictions, and therefore the Ordinance is content-based and therefore subject to strict scrutiny. Similarly, the Solicitation Ordinance is content-based and subject to strict scrutiny because it treats those who request donations from motorists on the roads differently than those who seek to communicate religious, political, or other ideological messages to the same motorists. The Supreme Court recently clarified this area of the law by holding that a law is "content-based" if it "applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015). When deciding whether a challenged law is "content-based," a court must "consider whether a regulation of speech 'on its face' draws distinctions based on the message of the speaker." *Id*. This is so *even if* the law does not favor one viewpoint over another. Although viewpoint discrimination is more "egregious," the Court made clear that "a speech regulation targeted at specific subject matter is content-based *even if it does not discriminate among viewpoints within that subject matter*." *Id*. at 2230 (emphasis added). In other words, treating different categories of speech differently renders a law content-based, even if the law permits all viewpoints within that category.

    The Ordinances at issue here fall squarely into the category of content-based regulations. The Panhandling Ordinance bans "requesting an immediate donation of money or other thing of

value for oneself or another person or entity" at certain times and locations, and bans at all locations a second request for a donation after a request is initially declined. However, the ban and restrictions apply *only* to those soliciting for money or other items of value. No other type of speech, such as speech seeking support for a political, religious, or social cause, is subject to the regulations. Thus, whether the regulations and criminal penalties apply depends entirely on the content of the message (i.e., a solicitation for "money or other thing of value").

Similarly, the Solicitation Ordinance applies to one who "sells," "advertises for sale," or "seeks any donation" from motorists on the roadways, but does not apply to those communicating other types of messages to the same motorists, such as a tourist requesting directions or a political candidate seeking votes. In short, the Ordinances fall squarely into the content-based camp, as defined by *Reed*: each "singles out specific subject matter for differential treatment." *Reed*, 135 S. Ct. at 2230. As such, they are content-based and must survive strict scrutiny.

A substantial number of courts nationwide have applied *Reed* to strike down panhandling ordinances similar to Section 16-82 of the Fort Lauderdale Code, on the grounds that they were content-based and did not survive strict scrutiny. For instance, in *Browne v. City of Grand Junction*, 136 F.Supp.3d 1276, 1280-1282, 1287-1288 (D. Colo. 2015), the court applied the *Reed* framework to an ordinance very similar to Section 16-82, in that the Grand Junction ordinance defined panhandling and prohibited panhandling in or near particular locations, including bus stops, ATMs, buses, schools, parking garages and lots, and retail establishments. *Browne* found the ordinance to be content-based, and concluded it did not survive strict scrutiny, because the provisions were not narrowly tailored to serve what the court recognized as a compelling government interest in public safety. *Id.* at 1289-1294. The restricted areas of

panhandling in Section 16-82 are more extensive than those in *Browne*, since Section 16-82 also includes city parks and all private property, and in light of *Browne*, such restrictions do not serve a compelling interest.

Other courts have joined *Browne* in striking down ordinances similar to Section 16-82 as content-based ordinances that were subject to strict scrutiny. *See Homeless Helping Homeless, Inc. v. City of Tampa*, 2016 WL 4162882  (M.D. Fla. 2016) (ordinance precluding solicitation in broad downtown zone, as well at ATMs, sidewalk cafes, and other locations, was content-based restriction that restricted speech in a traditional public forum, and did not survive strict scrutiny); *Norton v. City of Springfield, Illinois*, 806 F.3d 411 (7th Cir. 2015) (ordinance prohibiting panhandling in city's downtown historic district was content-based under *Reed*); *Thayer v. City of Worcester*, 144 F.Supp.3d 218 (D. Mass. 2015) (ordinance that defined aggressive panhandling to include soliciting within 20 feet of banks, mass transportation facilities, outdoor café seating, places of public assembly, etc. was content-based and did not survive strict scrutiny); *McLaughlin v. City of Lowell*, 140 F.Supp.3d 177 (D. Mass. 2015) (ordinance barring most downtown panhandling and location-based aggressive panhandling - e.g. banks, mass transportation facilities, outdoor seating areas, etc. - was content-based and did not survive strict scrutiny); *see also Leatherman v. Watson*, 2019 WL 827633 at ** 1, 3 (N.D. Cal. 2019) (where ordinance prohibited seeking donations on median strips, near intersections, at gas stations, within 15 feet of banks and ATMs, and within 35 feet of driveways to shopping centers and business establishments, plaintiffs sufficiently alleged that ordinance was content-based).

Likewise, courts nationwide have found street solicitation ordinances similar to Section 25-267 to be content-based ordinances governed by the strict scrutiny test. *See Rodgers v. Bryant*, 942 F.3d 451, 456 (8th Cir. 2019) (state loitering law which singled out panhandling was

content-based because the law "applies only to those asking for charity or gifts, not those who are, for example, soliciting votes, [or] seeking signatures for a petition"); *Fernandez v. St. Louis County, Missouri*, 461 F.Supp.3d 894, 898 (E.D. Mo. 2020) (ordinance that barred persons from standing in the roadway to solicit charitable contributions or business was not content-neutral); *Clatterbuck v. City of Charlottesville*, 92 F.Supp.3d 478, 492 (W.D. Va. 2015) (noting with respect to panhandling ordinance that "content-based nature of the ordinance is even clearer when one considers the many forms of communication that are not prohibited by the ordinance, but which a reasonable pedestrian fervently may wish to avoid, such as obnoxious wolf-whistles and catcalls, earnest political entreaties, and the like"); *Kelly v. City of Parkersburg*, 978 F.Supp.2d 624, 629-630 (S.D. W. Va. 2013) (ordinance was content-based where it applied "only to solicitations for money or contributions for any purpose" and did "not prohibit other types of solicitations, including solicitations for votes, solicitations to enter free raffles, or solicitations to register for a church mailing list").  Thus, Section 25-267, which treats those seeking donations differently from those seeking votes or driving directions, is also a content-based ordinance that must survive strict scrutiny.

    **B.**    **The Ordinances Cannot Withstand Strict Scrutiny Because the City Cannot Prove that they are Narrowly Tailored to, and the Least Restrictive Means of Achieving, a Compelling Government Interest.**

To withstand strict scrutiny, the City of Fort Lauderdale must prove that each of the Ordinances "furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed*, 135 S. Ct. at 2231.  The City must also show that the laws are the "least restrictive means" of accomplishing that vital interest.  *See United States v. Playboy Entm't Grp., Inc.,* 529 U.S. 803, 813 (2000) ("If a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative.").  Moreover, "'content-based regulations are presumptively

11

invalid,' and the Government bears the burden to rebut that presumption." *Id.* at 817 (quotation omitted).

> ### 1.   The City Has Not Advanced Compelling Government Interests In Support of the Ordinances

The City cannot meet its burden because the Ordinances do not serve a compelling government interest.   Here, the interests Fort Lauderdale has asserted for enactment of the Panhandling Ordinance include the comfort of the individuals being solicited for donations and the impact on nearby businesses of panhandling.[1]   These interests do not rise to the level of compelling government interests, and therefore the Panhandling Ordinance does not survive strict scrutiny.   *See Tinker v. Des Moines Independent Community School Dist.*, 393 U.S. 503, 509 (1969) (speech cannot be restricted based on "mere desire to avoid ... discomfort and unpleasantness"); *McCullen*, 573 U.S. at 476 (fact that individual using the public streets and sidewalks may encounter an "uncomfortable message" is a "virtue, not a vice" of such traditional public fora); *McLaughlin*, 140 F.Supp.3d at 188-189 (promotion of business is at most a significant and substantial governmental interest, but not a compelling governmental interest).

With respect to the Solicitation Ordinance, during the enactment process the City asserted

---

[1] The second "WHEREAS" clause in the preamble of the Panhandling Ordinance states, "the City Commission finds that an increase in aggressive begging, panhandling and solicitation throughout the city has become extremely *disturbing* and *disruptive* to residents and businesses and has contributed to the *loss of* access to and *enjoyment of public places* and also *loss of customers for businesses and closure of businesses in the city*."   Ordinance No. C-12-10 (Exhibit 1) (emphasis added).

The fourth "WHEREAS" clause in the preamble states, "the City Commission finds that the presence of individuals who solicit money from other individuals at or near outdoor cafes, automated teller machines, entrances/exits to and from buildings and parking garages is especially troublesome because these solicited individuals cannot readily escape from *unwanted* solicitation." *Id*. (emphasis added).   The City's concerns about solicitation being "unwanted," "disturbing and disruptive," and purportedly causing "loss of ... enjoyment of public places" amount to no more than concerns about the comfort of those being solicited.

that its interest in traffic safety justified the Ordinance.[2]   But traffic safety is also not a compelling government interest.  *See  Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1267 (11th Cir. 2005) (for purpose of challenge to content-based restriction on speech, traffic safety was not a compelling interest); *Beaulieu v. City of Alabaster*, 454 F.3d 1219, 1233-1234 (11th Cir. 2006) (in challenge to content-based restriction on speech, traffic safety was substantial but not compelling interest).  *Cf. Reed*, 135 S.Ct. at 2231 (Court assumed for sake of argument, without deciding, that traffic safety was a compelling government interest).

In short, while the City's asserted interests are significant or substantial, they do not rise to the level of compelling government interests necessary to satisfying the strict scrutiny standard applicable given that both challenged Ordinances are content-based restrictions on speech.

> **2**.    **Even Assuming That the City Has Advanced Compelling Government Interests, the Ordinances Are Not Narrowly Tailored to Serve These Interests.**

Even if the City has asserted compelling government interests, both Ordinances fail the narrow tailoring test.  Laws may fail the narrow tailoring requirement where they "burden substantially more speech than is necessary to further the government's legitimate interests[,]" and are therefore fatally *over*inclusive.  *McCullen*, 573 U.S. at 486 (under intermediate scrutiny, striking down law imposing speech buffer zones around abortion clinics in part because the law applied statewide instead of targeting the one problematic clinic).  *See also Cutting v. City of Portland, Maine*, 802 F.3d 79, 82, 90 (1st Cir. 2015) (ordinance prohibiting standing on a

---

[2] The fifth "WHEREAS" clause in the preamble of the Solicitation Ordinance states, "distraction of motorists occasioned by solicitations ... impedes the safe and orderly flow of traffic." Ordinance No. C-14-38 (Exhibit 2).

median, which city enforced against panhandlers, was not narrowly tailored because it was "geographically overinclusive"); *Reynolds v. Middleton*, 779 F.3d 222, 231-232 (4th Cir. 2015) (under intermediate scrutiny, holding that ordinance prohibiting roadway solicitation was not narrowly tailored when it applied to all roads regardless of location and traffic volume).

The Panhandling Ordinance is overinclusive, by barring repetitive requests for donations throughout the City, and by restricting panhandling at locations that represent a broad swath of the City – bus stops,  public transportation facilities, public transportation vehicles; City parking lots, parking garages, and parking pay stations; City parks; sidewalk cafés, automatic teller machines, entrances or exits of  commercial or governmental buildings; and all private property (without the owner's permission). Sections 16-82(a); 16-82(b); 16-82(c).  *McLaughlin*, 140 F.Supp.3d at 194, 195 (giving panhandlers only one opportunity to convey their message, without a chance to follow up, was more restrictive than necessary, and restrictions on panhandling near bus stops and ATMs were not narrowly tailored).  Whatever the City's goal in passing the ordinance, banning requests for funds in large swaths of the City is certainly not the least restrictive means of advancing it.

The Solicitation Ordinance is also overinclusive because it bars those who solicit donations while holding signs from conducting their activities on any City roads, regardless of the location or traffic volume, and thus out of any proportion to the traffic hazards the City seeks to prevent.  Section 25-267(a); Section 25-267(d).

Courts have also found laws not to be narrowly tailored where they are underinclusive. *See Reed*, 135 S. Ct. at 2232 ("In light of this underinclusiveness, the Town has not met its burden to prove that its Sign Code is narrowly tailored to further a compelling government interest."); *Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 802 (2011) (law restricting the sale

14

of violent video games to minors was "wildly underinclusive" because the state "declined to restrict" other forms of media that could be equally dangerous to children, and this alone caused the law to fail strict scrutiny).[3]

Assuming *arguendo* that traffic safety is a compelling government interest, the Solicitation Ordinance is fatally underinclusive: it penalizes only certain types of activities that generate the alleged safety hazard, while leaving others unregulated. People holding political signs are just as likely to distract drivers—if not more so—as people holding signs requesting donations, yet the Solicitation Ordinance bars requesting donations while leaving people free to hold political signs. If the Solicitation Ordinance legitimately sought to promote traffic safety, it would apply to all solicitations that could potentially create the targeted public danger the law seeks to prevent. The Solicitation Ordinance is thus fatally underinclusive and not narrowly tailored.

Courts have soundly rejected street solicitation restrictions based on public safety when finding that panhandling is singled out for different treatment, as with the instant Solicitation Ordinance, which treats requests for donations differently than persons holding a sign to support a cause. Such laws are not narrowly tailored to achieve a compelling state interest because of their underinclusiveness. *See Rodgers*, 942 F.3d at 457 (since state provided "no justification for its decision to single out charitable solicitation from other types of solicitation, the anti-loitering law is underinclusive and, consequently, not narrowly tailored"); *Clatterbuck*, 92 F.Supp.3d at 487 ("The same public safety issue is presented whether the person stopping (or attempting to

---

[3] Underinclusiveness also raises doubts as to whether the City's proffered justification is compelling. *See Church of the Lukumi Babalu Aye v. Hialeah*, 508 U.S. 520, 546-47 (1993) ("Where government restricts only conduct protected by the First Amendment and fails to enact

stop) the vehicle is seeking an immediate donation of something of value; or a signature on a petition; or a pledge of future donations; or directional information …"); *Kelly*, 978 F.Supp.2d at 630 (in pre-*Reed* case, holding anti-panhandling law unconstitutional in part because "[a] solicitor of votes presumably presents the same traffic safety concerns as a solicitor of money or contributions. Yet only solicitors requesting money or contributions are regulated by the Ordinance.").

The Panhandling Ordinance is also not narrowly tailored because of provisions pertaining to behavior likely to violate existing criminal laws.   In *McLaughlin*, the court held that "the City has not demonstrated that public safety requires harsher punishments for panhandlers than others who commit assault or battery or other crimes. 140 F.Supp.3d at 193. "The City may not deem criminal activity worse because it is conducted in combination with protected speech, and it certainly may not do so in order to send a message of public disapproval of that speech on content based grounds." *Id.; see Thayer,* 144 F.Supp.3d at 235-237 (following *McLaughlin* in declining to uphold panhandling restrictions that duplicated existing criminal laws). In the instant case, the City's Panhandling Ordinance defines aggressive panhandling to include blocking a person's passage, touching a person without permission, or engaging in conduct threatening another with "imminent bodily injury" or "commission of a criminal act" or intended to force compliance with demands. Section 16-82(a).   These activities are already punishable through existing criminal laws, and the Panhandling Ordinance therefore is not narrowly tailored.

Finally, in defense of the Ordinances, Fort Lauderdale cannot argue that Sections 16-82 and 25-267 are just regulations and not outright bans or complete prohibitions.   First, the

---

feasible measures to restrict other conduct producing substantial harm or alleged harm of the same sort, the interest given in justification of the restriction is not compelling.").

Panhandling Ordinance *does* ban speech at certain times and places, and those locations are considerable in scope.  Section 16-82(b).  Likewise, the Solicitation Ordinance bans requests for donations from motorists citywide, where the requester is holding a sign in the right-of-way.  Section 25-267(d).   Second, "[i]t is of no moment that the statute does not impose a complete prohibition. The distinction between laws burdening and laws banning speech is but a matter of degree. The Government's content-based burdens must satisfy the same rigorous scrutiny as its content-based bans."  *Playboy Entertainment Group,* 529 U.S. at 812.  Thus, any attempt to distinguish post-*Reed* decisions applying strict scrutiny to anti-panhandling ordinances by noting that Fort Lauderdale is merely regulating panhandling—not banning it—entirely fails.

For all these reasons, the Panhandling and Solicitation Ordinances are content-based restrictions on protected speech that cannot withstand strict scrutiny because they are not narrowly tailored to a compelling state interest, nor are they the least restrictive means of furthering that interest.  Plaintiffs are likely to succeed on the merits of their First Amendment claims.

## II.    Plaintiffs Have Established the Remaining Criteria for a Preliminary Injunction

### A.    Irreparable Injury

"[I]t is well settled that the 'loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitute irreparable injury.'"  *KH Outdoor, LLC v. City of Titusville*, 458, F.3d 1261, 1271-72 (11th Cir. 2006) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  The penalization of Plaintiffs' First Amendment rights cannot be "cured by the award of monetary damages."  *KH Outdoor,* 458 F.3d at 1272.  *See also Scott,* 612 F.3d at 1295.

### B.    Balance of Harms and Public Interest

The third and fourth preliminary injunction criteria are also satisfied.  With respect to the balance of harms, "even a temporary infringement of First Amendment rights constitutes a serious and substantial injury."  *Scott*, 612 F.3d at 1297.  On the other side of the ledger, "the public, when the state is a party asserting harm, has no interest in enforcing an unconstitutional law."  *Id*.  Enforcing unconstitutional laws also wastes valuable public resources.  Finally, because the public has no interest in enforcing an unconstitutional speech restriction, an injunction against enforcement cannot "disserve" the public interest.  *Id*. at 1290, 1297.

## <u>CONCLUSION</u>

Based on the above argument and authorities, Plaintiffs respectfully request that this Court declare that the City's Panhandling and Solicitation Ordinances are unconstitutional, both facially and as applied to Plaintiffs, and immediately enjoin the City and its agents from enforcing them.

Respectfully submitted,

Dante P. Trevisani
Florida Bar No. 72912
E-mail: *dtrevisani@floridajusticeinstitute.org*
Ray Taseff
Florida Bar No. 352500
E-mail: *rtaseff@floridajusticeinstitute.org*
Florida Justice Institute, Inc.
100 S.E. 2nd Street
3750 Miami Tower
Miami, Florida 33131-2309
305-358-2081
305-358-0910 (Fax)

By:      *s/Ray Taseff*
        Ray Taseff

Mara Shlackman
Florida Bar No. 988618
Email:  mara@shlackmanlaw.com
Law Offices of Mara Shlackman, P.L
757 SE 17th Street, PMB 309
Fort Lauderdale, Florida 33316
954-523-1131
954-206-0593 (Fax)

F.J. McLawrence
Florida Bar No. 624527
Email:  info@mclawrencelaw.com
The McLawrence Law Firm
633 S. Federal Highway; Ste. 200-B
Fort Lauderdale, Florida 33301
954-318-1376
954-616-0566

**Attorneys for Plaintiff**

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed today, January 28, 2021, the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all persons registered to receive electronic notifications for this case, including all opposing counsel.  Also, on today's date, I sent a copy of this Motion and its attachments via email to:

    Alain Boileau
    City Attorney, City of Fort Lauderdale
    aboileau@fortlauderdale.gov

                  By:    *s/Ray Taseff*
                          Ray Taseff

20