UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.: 21-CV-60168-RKA

MARK MESSINA and
BERNARD MCDONALD,

    Plaintiff,
vs.

CITY OF FORT LAUDERDALE,
FLORIDA, a Florida municipal corporation,

    Defendant.
_____/

## DEFENDANT CITY OF FORT LAUDERDALE'S RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

The Defendant City of Fort Lauderdale ("City"), by and through its undersigned attorneys and pursuant to Local Rule 7.1 C, submits its response to Plaintiff's motion for Preliminary Injunction (DE 5) and states as follows:

1. Plaintiffs Mark Messina ("Messina") and Bernard McDonald ("McDonald") (collectively "Plaintiffs") request that this court declare City Code of Ordinance §16-82 (panhandling, begging or solicitation) and §25-267 (right-of-way solicitors and canvassers) unconstitutional and enter a preliminary injunction to enjoin their enforcement as violative of the free speech clause of the First Amendment of the United States Constitution.

2. Although Plaintiffs do not allege that they have ever been arrested, given a notice to appear or issued a citation for violating the subject ordinances, Plaintiffs assert that they have standing to seek damages together with declaratory and injunctive relief and that this action

presents a live case or controversy for the Court. Since the subject ordinances have never been applied to Plaintiffs, they lack standing to assert an as applied challenge, and their facial challenge fails to present a live case or controversy within the Court's subject matter jurisdiction. As a result, Plaintiff's motion for preliminary injunction should be denied.

3. In the event the Court finds that it has subject matter jurisdiction to address the merits, the motion for preliminary injunction should be denied as to section 16-82 because the challenged ordinance is a valid time, place and manner regulation which is content neutral, narrowly tailored to serve a significant government interest and leaves open ample alternative means of communication. *Gresham v. Peterson*, 225 F.3d 899 (7th Cir. 2000) (upholding the validity of a City of Indianapolis panhandling regulation virtually identical to City Code section 16-82) As such, Plaintiff's lack of substantial likelihood of prevailing on the merits and as set forth below fail to show irreparable harm or that a balancing of the interests of harm and public interest weighs in favor of the Plaintiffs. In the alternative, the City has a compelling interest in regulating panhandling at the specified locations, and the restrictions are narrowly tailored to further this vital interest. As a result, the motion for preliminary injunction should be denied.

4. In the event the Court finds that it has subject matter jurisdiction to address the merits, the motion for preliminary injunction should be denied as to section 25-267 because it constitutes a valid time, place and manner regulation which is content neutral, narrowly tailored to serve a significant government interest and leaves open ample alternative means of communication. *Cosac Foundation, Inc. v. City of Pembroke Pines*, 2013 WL 5345817 (S.D. Fla. 2013) (upholding a right-of-way solicitation ordinance virtually identical to City Code section 25-267). As such, Plaintiff's lack of substantial likelihood of prevailing on the merits

and the balancing of the harm and impact on the public interest does not weigh in favor of the Plaintiffs. In the alternative the City has a compelling interest in regulating the public safety hazards caused by persons interacting with motorists at specified locations and the restrictions are narrowly tailored to further this vital interest. The motion for preliminary injunction should be denied.

## Memorandum of Law

### Lack of Subject Matter Jurisdiction

Plaintiff's Messina and McDonald request that this Court enter the extraordinary remedy of a preliminary injunction to enjoin enforcement of two sections of the City's Code of Ordinances (16-82 Panhandling and 25-267 Right of Way Solicitors) based on a claim that the regulations are violative of the free speech clause of the First Amendment of the Unites States Constitution.[1] While it is alleged that violations of these City Code sections constitute second degree misdemeanors, Plaintiffs do not allege they have ever been arrested, given a notice appear or cited for violating the regulations. Moreover, while it is alleged that over the last two years more than 100 other persons have been cited for violating the regulations, the evidence produced by the Plaintiffs show that none of the cited violations have occurred within the last 20 months. (DE 5-6)

Plaintiff Messina alleges that he currently panhandles twice a week at a number of unspecified locations in the City of Fort Lauderdale, and that he would like to panhandle more, but that the complained of regulations have a "chilling effect" on the amount of panhandling he

---

[1] The primary purpose of a preliminary injunction is to preserve the status quo pending a final decision on the merits. Here Plaintiffs request the Court alter the status quo and preliminarily grant the ultimate relief sought by the Plaintiffs. See *Robinson v. Attorney General*, 957 F.3d 1171, 1178-79 (11th Cir. 2020).

does in the City. (DE 1 at ¶36 and 40)  While he alleges that he has been "harassed" by police officers regarding his activities, he does not allege when or where this has occurred or the name of any police officer who allegedly harassed him or that the police officer cited the challenged City Code provisions in threatening to take any action. (DE 1 at ¶38)  Plaintiff Messina alleges that he uses a sign as part of his effort to obtain donations and the complained of regulations expressly allow for use of a message sign to obtain donations from persons willing to provide the same. (DE 1 at ¶37)   Finally, while it is alleged that other persons have been cited or arrested for violating the regulations, the evidence produced by the Plaintiffs indicates that the last such arrest/citation was more than twenty months ago. (DE 5-6)

Plaintiff McDonald alleges that he continues to engage in peaceful panhandling at numerous unspecified locations in Fort Lauderdale but does not describe the frequency with which he does so. (DE 1 at ¶43)   Like Plaintiff Messina, McDonald alleges that he uses a sign as part of his panhandling which the challenged regulations specifically permit. (DE 1 at ¶43)  Plaintiff McDonald does not allege that he has ever been arrested or cited for a violation of the challenged regulations, but that he has repeatedly been "harassed" by unidentified Fort Lauderdale police officers at unspecified places and dates. (DE 1 at ¶44)   Plaintiff McDonald states that he wants to panhandle more than he does in the City but that the regulations have "had a chilling effect on Mr. McDonald's exercise of his First Amendment rights." (DE 1 at ¶45)

It is of course well settled that the subject matter jurisdiction of the federal courts is limited by Article III of the Constitution to live cases and controversies.  *Wilding v. DNC Service Corp.*, 941 F.3d 1116, 1124 (11th Cir. 2019).   To satisfy the case or controversy requirement of Article III, a plaintiff must plausibly and clearly allege standing. *Tsao v. Captiva*

4

*MVP Restaurant Partners, LLC*, 2021 W.L. 381948 at *3 (11th Cir. February 4, 2021).   Where a complaint fails to allege standing, the action should be dismissed for lack of subject matter jurisdiction. Id.

### **Plaintiffs Lack Standing**

Plaintiffs have standing where they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, _US_, 136 S.Ct. 1540, 1546-47, 194 L.Ed. 2d. 635 (2016).   In order to satisfy the first element, Plaintiffs must set forth factual allegations that "plausibly and clearly allege a concrete injury and that injury must be actual or imminent, not conjectural or hypothetical."   *Tsao v. Captiva MVP Restaurant Partners, LLC*, supra at *3. (internal quotes and citations omitted). [M]ere conclusory statements do not suffice. Id. quoting *Ashcroft v. Iqbal*, 556 US 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed. 2d 868 (2009).

Plaintiffs Messina and McDonald do not allege any concrete injury in fact.   The Complaint is devoid of any allegation that the challenged regulations have ever been applied to the Plaintiffs.   There is no allegation that the Plaintiffs have ever been arrested, given a notice to appear or issued a citation for violating the challenged regulations.   Moreover, while it is alleged that they have been "harassed" by police officers while panhandling, there is no allegation that the officers cited to or based their actions on the challenged regulations.

The primary basis upon which Plaintiffs appear to assert their standing to sue is the allegation that the challenged regulations have had a "chilling effect" on Plaintiff's exercise of their claimed First Amendment rights.   However, the Complaint specifically alleges that Plaintiff Messina solicits for donations in the City of Fort Lauderdale at a number of different

5

locations and currently panhandles in Fort Lauderdale a couple of times per week. (DE 1 at ¶40) With respect to Plaintiff McDonald, the complaint alleges that he engages in peaceful panhandling at numerous locations in Fort Lauderdale. While the Complaint contains a conclusory allegation that the challenged regulations have had a "chilling effect" on the Plaintiffs, the specific allegations of the Complaint allege that the Plaintiffs continue to engage in the protected speech (panhandling) at numerous locations throughout the City and as set forth above, the Complaint is devoid of any allegations that the regulations have ever been enforced against the Plaintiffs. The Court's "duty to accept the facts in the complaint as true does not require (the Court) to ignore specific factual details of the pleading in favor of general or conclusory allegations." *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007).

While it is well established that an injury in fact may be established if a person refrains from protected speech because of fear that a law or regulation will be enforced, the specific factual allegations of the Complaint demonstrate this principle does not apply to the Plaintiffs. See *Pittman v. Cole*, 267 F.3d 1269, 1283 (11th Cir. 2001). In attempting to establish a reasonable fear of enforcement, Plaintiffs have attached 100 arrest reports, the most recent of which involves the arrest more than 1 ½ years ago, of a James Melnicoff on June 17, 2019. (DE 5-6 at p.2) Plaintiffs do not allege that the challenged regulations have ever been applied to them, and do not allege that they have refrained from engaging in panhandling or right-of-way solicitation in the City of Fort Lauderdale because of fear that the challenged regulations would be enforced against them. Instead, the verified Complaint affirmatively alleges that the Plaintiffs regularly engage in panhandling and solicitation in the City of Fort Lauderdale, and do not allege that the challenged regulations have ever been applied to them. Plaintiff's claimed

injury is hypothetical and based on conjecture that they have reduced the amount of panhandling within the City so as to constitute an actual and concrete injury. As a result, the Plaintiffs have failed to show that they have sustained any actual injury which warrants this Court's exercise of subject matter jurisdiction.

The Plaintiffs have failed to set forth sufficient allegations to show that they have standing to challenge the complained of regulations and as a result the Court lacks subject matter jurisdiction. In the absence of subject matter jurisdiction, the action should be dismissed and/or the motion for preliminary injunction should be denied.

### **§16-82 is a Lawful Content Neutral Regulation[2]**

The challenged City regulation is a reasonable content neutral, time, place and manner restriction. The subject regulation does not prohibit persons from begging or otherwise seeking a donation at any location within the City. Instead, persons may beg or otherwise seek a donation at any public place within the City by "standing, sitting, performing music or singing with a sign or other indication that a donation is being sought but without approaching persons and making a vocal request for the donation." (See §16-82(a))  It is not the content of the speech which is regulated, but rather the manner of the speech and the place it occurs which is the subject of the regulation. See *Stardust 3007 LLC v. City of Brookhaven*, 899 F.3d 1164, 1173-74 (11th Cir. 2018) (regulation regarding where adult businesses can locate is a content neutral time place and manner restriction), *One World One Family Now v. City of Miami Beach*, 175 F.3d

---

[2] §16-82 also constitutes a content neutral regulation on commercial speech which is subject to the intermediate scrutiny test established in *Central Hudson Gas and Electric Corp. v. Public Service Commission*, 447 US 557, 100 S.Ct. 2343, 65 L.Ed. 2d 341 (1980) and *Ocheesee Creamery, LLC v. Putnam*, 851 F.3d 1228, 1234-35 (11th Cir. 2017).  The City's interest in protecting persons from the alarm of the unsolicited demands for money and the unwanted touching, detaining, impeding or intimidation that it causes and the regulation directly advances the interest and is not more extensive than is necessary to serve the interest.

7

1282, 1287 (11th Cir. 1999) (prohibition of vending and use of portable tables to facilitate donations content neutral) and *One World One Family Now*, 296 F.Supp. 2d 1291, 1294-95 S.D. Fla. (2003) (prohibition of portable tables on public sidewalks to sell message bearing t-shirts content neutral).

The validity of content neutral regulations on the time place and manner of speech are subject to review under an intermediate scrutiny standard. Specifically, the regulations are valid if they further a significant government interest, the regulation is narrowly tailored to further the interest and the regulation leaves open ample alternative means for the speech. *Stardust 3007 LLC v. City of Brookhaven*, supra at 1173-74. Section 16-82 of the City's Code of Ordinances satisfies this standard.

The City has a significant and substantial interest in protecting persons at specified locations from the reasonable and immediate alarm and concern which results from unsolicited demands for money and the unwanted touching, detaining, impeding and/or intimidation that results from such actions. See *Gresham v. Peterson*, 225 F.3d 899, 906 (7th Cir. 2000)[3] Indeed, Plaintiffs concede that the City's asserted interests "are significant or substantial…." (DE 5 at p. 13).

Section 16-82 is also narrowly tailored to further the City's significant and substantial interest. First, the City does not restrict panhandling, begging or solicitation which is unaccompanied by a direct vocal request for a donation. Secondly, the restriction on the manner of panhandling is limited to public transportation facilities and vehicles, parking facilities, city

---

[3] In *Gresham*, the Seventh Circuit affirmed the denial of a permanent injunction which challenged an ordinance adopted by the City of Indianapolis very similar to §16-82. Id. at 901-02.

parks and areas in the immediate vicinity of an automatic teller machine, a sidewalk café or entrance to a commercial or government building. Persons are required to use these areas for work and other essential activities (public transportation, parking facilities and commercial or government buildings) and/or the restricted areas present circumstances where the alarm or immediate concern for the safety of individuals by unwanted touching, detaining, impeding or intimidation would be exacerbated (automatic teller machines, parks, sidewalk cafés, public transportation vehicles and parking pay stations) by vocal requests or demands for donations.

The challenged regulation also leaves open ample alternative means of panhandling, begging and solicitation. As set forth above, these activities are permitted at virtually any public place as long as the begging is not accompanied by a direct vocal request for the donation.[4] Moreover, direct vocal requests for donations are permitted throughout the City at any of the numerous sidewalks and other public areas which are not included within the prohibited areas.

In summary, section 16-82 of the City Code of Ordinances is a reasonable content neutral time, place and manner restriction which furthers the public safety and welfare interests of the City, its residents and visitors and allows persons to engage in panhandling and begging throughout the public areas of the City. As such, Plaintiffs do not have a substantial likelihood of prevailing on their claim that the regulation is violative of the First Amendment and the motion for preliminary injunction should be denied.

---

[4] Panhandling does not mean the act of passively standing or sitting, performing music, or singing with a sign or other indication that a donation is being sought, but without any vocal request other than a response to an inquiry by another person". (Section 16-82(a)). Moreover, the City has 325 miles of sidewalk which obviously includes numerous areas which are not located immediately adjacent to automatic teller machines, sidewalk cafes or the entrances to commercial or governmental buildings. All of these areas are readily available to the Plaintiffs and others for direct vocal panhandling and begging. (www.fortlauderdale.gov/home/showdocument?id=3565#).

### §25-267 is a Valid Content Neutral Regulation[5]

City Code §25-267 (Ordinance No. C-14-38-DE 5-3) prohibits the commercial interaction between solicitors and motorists on designated City Arterial Roadways which are over capacity and operating at levels of service D, E or F. The regulation also prohibits the storage of goods, merchandise and other materials on any portion of a public street, median or bicycle lane. Finally, the ordinance prohibits a right-of-way canvas or solicitor from using a sign or other device in the public right-of-way which violates the provisions of Section 47-22 of the City's unified land development regulations.

Section 25-267 is also a content neutral time place and manner restriction, the validity of which has been previously upheld by the Southern District of Florida. See, e.g. *Cosac Foundation, Inc., v. City of Pembroke Pines*, 2013 WL 5345817 (S.D. Fla. 2013). (Then District Judge Rosenbaum rejecting a challenge to the City of Pembroke Pines Right-of-Way Solicitors and Canvassers Ordinance). The challenged regulation is virtually identical to the City of Pembroke Pines regulation which was reviewed by then District Judge Robin S. Rosenbaum in *Cosac Foundation, Inc v. City of Pembroke Pines*, 2013 W.L. 5345817 (S.D. Fla. 2013). In the *Cosac* case, the City of Pembroke Pines adopted an ordinance which made it unlawful for anyone to act as a "right-of-way canvasser or solicitor" on certain roads which were heavily traveled and presented traffic safety hazards for motorists and pedestrians. A right-of-way canvasser or solicitor was defined to mean:

---

[5] §25-267 for the most part regulates commercial speech and satisfies the intermediate scrutinary test established in *Central Hudson Gas and Electric Corp. v. Public Service Commission*, 447 US 557, 100 S.Ct. 2243, 65 L.Ed. 2d 341 (1980). The City's interest in protecting the safety of pedestrians and motorists constitutes a substantial government interest and the regulation is narrowly tailored through its application only to the most heavily traveled and congested arterial roadways within the City. Ample alternative means of communication are left unaffected.

> Any person who sells or offers for sale any thing or service of any kind, or who seeks any donation of any kind, or who personally hands or seeks to transmit by hand or receive by hand any thing or service of any kind, whether or not payment in exchange is required or requested, to any person who operates or occupies a motor vehicle of any kind, which vehicle is engaged in travel on or within any portion of any of the streets or roadways in the City whether or not such vehicle is temporarily stopped in travel lanes of the road.[6]

Similarly, the government interests in the challenged regulation are substantially the same as those set for in the City of Pembroke Pines Ordinance. Id. at *2. The court in *Cosac* also determined that the ordinance was content neutral because "the Ordinance applies even handedly to all those who wish to sell or offer for sale anything or service of any kind, or who seek any donation of any kind or hand or seek to transmit by hand or receive by hand any thing or service of any kind to a motorist". Id. at *12 (citations and internal quotes omitted). Similarly, the challenged regulation constitutes a content neutral, time, place and manner restriction. *Stardust, 3007 LLC v. City of Brookhaven*, 899 F.3d 1164, 1173-74 (11th Cir. 2018) (city zoning regulations regarding the location of adult entertainment establishments were content neutral).

Plaintiffs do not assert that the City lacked a significant or substantial interest in adopting §25-267. Instead, Plaintiffs concede that the City's "asserted interests are significant or substantial…." (DE 5 at p. 13). Clearly, the City's interest "in protecting its citizens and ensuring that its streets and sidewalks are safe for everyone is constitutionally significant." *Cosac Foundation, Inc.*, supra at *16, citing *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 508-09, 101 S.Ct. 2882, 69 L.Ed 2d. 800 (1981). The challenged City regulation is also narrowly tailored:

---

[6] The definition is identical to that contained in Section 25-267(a) of the challenged ordinance (DE 5-4 at p. 1.)

> A restriction is narrowly tailored so long as the… regulation promotes a substantial government interest that would be achieved less effectively absent the regulation. To be narrowly tailored, a regulation need not be the least restrictive or lease intrusive means of accomplishing its purpose. Rather, a content neutral regulation may be considered narrowly tailored when it does not entirely foreclose any means of communication, even though it is not the lease restrictive or least intrusive means of serving the statutory goal. Id. at *19. (internal citations and quotes omitted).

See, also *Smith v. City of Fort Lauderdale*, 177 F.3d 954 (11th Cir. 1999) (upholding regulations prohibiting begging on Fort Lauderdale Beach).

In the instant case, the challenged City regulation is limited to "arterial" roadways, which are over capacity and have a designated level of service of D, E or F. (DE 5-3 at p. 3 and §25-267(b)). Consistent with its goal of furthering pedestrian and motorist safety, the restrictions are limited to arterial roadways[7] where vehicular traffic exceeds the level of service C.[8] Roadways with a level of service A, B and C operate more efficiently and with less congestion than roadways with a level of service D, E and F. In short, the challenged regulation is narrowly confined to large over capacity roadways which present significant dangers to pedestrians and motorists who interact and exchange goods, services or donations with each other while the vehicle is engaged in travel. As reflected on Exhibit A to the regulation, huge swaths of the City and its roadways are available for right-of-way canvassers and solicitors.

Plaintiff's motion also asserts that §25-267(d) renders the right-of-way solicitor ordinance overinclusive "because it bars those who solicit donations while holding signs from

---

7 Arterial roadways refer to roads which are relatively continuous and have a relatively high traffic volume and high operating speed. See §334.03(1), Fla. Stat.

8 A roadway's level of service means an indicator of the extent or degree of service provided by the operational characteristics of the roadway. See §163.3164 (28), Fla. Stat.

12

conducting their activities on any City roads, regardless of the location or traffic volume and thus out of any proportion to the traffic hazards the City seeks to prevent". (DE 5 at p. 14)   Plaintiff's assertion is not accurate.   Instead, §25-267(d) applies only to signs "contrary to any of the terms and provisions of section 47-22, of the (City's) Unified Land Development Regulations.   The Plaintiffs do not point to any portion of section 47-22 which their signs violate and like the remainder of their claim there is no allegation that this Section has even been applied to the Plaintiffs.

**<u>Absence of Irreparable Harm</u>**

Irreparable harm to the plaintiff is an essential requirement for the issuance of a preliminary injunction, particularly an injunction which does not maintain the status quo but grants the ultimate relief sought by the plaintiff. *Robinson v. Attorney General*, supra at 1178-79 ("the chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully adjudicated").   Plaintiff's motion glosses over this by stating the well settled principle that the "lost of first amendment freedoms, for even minimal periods of time, unquestionably constitute irreparable injury." (DE 5 at p. 17)   However, Plaintiffs fail to explain how this principle applies to them.   Instead, while the Verified Complaint states that Plaintiffs have resided in this area for decades, there is no assertion that the challenged regulations have even been applied to them, through an arrest or citation.   Secondly, Plaintiffs do not claim that they have refrained from engaging in panhandling and soliciting at numerous locations within the City.   The Plaintiffs fail to establish that they will be irreparably harmed if the motion for preliminary injunctive relief is denied.

**Balance of Harm and Detriment to the Public Interest**

Again, Plaintiffs motion glosses over whether the harm to the Plaintiffs outweighs the harm to the City and its citizens and whether the preliminary relief would be a disservice to the public interest. (DE 5 at p.18)   Plaintiffs do not engage in any balancing of the harms or the impact a preliminary injunction will have on the public interest.  Instead, Plaintiffs simply argue that the Court should on a preliminary basis grant the ultimate relief Plaintiff's seek and declare the challenged regulations unconstitutional.

The constitutionality of regulations almost identical to those challenged by the Plaintiffs in this action have previously been upheld by the federal courts.  See *Gresham v. Peterson*, 225 F.3d 899 (7th Cir. 2000) (upholding the constitutionality of a City of Indianapolis panhandling ordinance almost identical to §16-82) and *Cosac Foundation, Inc. v. City of Pembroke Pines*, 2013 WL 5345817 (S.D. Fla. 2013) (upholding the constitutionality of a City of Pembroke Pines ordinance virtually identical to City Code §25-267).   In evaluating these elements (balancing of harm and public interest), the Eleventh Circuit has observed "the less certain the district court is of the likelihood of success on the merits, the more plaintiffs must convince the district court that the public interest and balance of hardships tip in their favor". *Scott V. Roberts,* 612 F.3d 1279, 1297 (11th Cir. 2010) quoting *Southwest Voter Registration Project v. Shelley,* 344 F.3d 914, 918 (9th Cir. 2003) (en banc).  Although Plaintiffs essentially argue that all local government regulation of panhandling and pedestrian solicitation of motorists has been eliminated by the Supreme Court's decision in *Reed v. Town of Gilbert*, 576 US 155, 135 S.Ct. 2218, 192 L.Ed. 2d 236 (2015); Plaintiff's motion fails to cite any decision of the Supreme Court or the Eleventh Circuit which has applied *Reed* to invalidate such regulations.   Instead, subsequent to *Reed*, the

14

Eleventh Circuit has continued to analyze regulations designed to limit the adverse secondary effects of some speech as content neutral where there is no viewpoint discrimination. For example, in *Stardust, 3007, LLC v. City of Brookhaven*, 899 F.3d 1164, 1173-74 (11th Cir. 2018) the Eleventh Circuit analyzed the zoning ordinance designed to regulate the negative secondary effects of adult businesses as a content neutral time, place and manner restriction. In *Stardust*, the Eleventh Circuit held "despite its incidental impact on free speech, such an ordinance complies with the First Amendment if it designed to serve a substantial government interest and leaves open alternative avenues of communication". Id. at 1173. Plaintiff's fails to cite any case from the Supreme Court which deviates from the content neutral analysis and intermediate scrutiny employed by the Seventh Circuit in *Gresham* and the Southern District of Florida in *Cosac* to regulations virtually identical to those challenged in this action.

If the preliminary injunction is issued, it is apparent that it will have a significant impact on the public interest and the City's desire to prevent persons from being subjected to the demands and intimidation of vocal panhandlers at vulnerable locations and the public safety of pedestrians and motorists in and around the City's most heavily traveled arterial roadways. Conversely, Plaintiffs will continue to engage in the conduct which they describe in the Complaint consisting of panhandling and soliciting at numerous locations within the City.

**City's Compelling Interest**

The City maintains that the challenged regulations do not involve content-based restrictions on speech, and that the regulations should be analyzed under the intermediate scrutiny standard established for reasonable content neutral time, place and manner restrictions. However, the City alternatively asserts that if the Court determines that the regulations are

content based, the regulations further compelling government interests and are narrowly tailored to achieve those interests. The City's downtown core is the economic and financial lifeblood of the City. Unlimited direct vocal panhandling without any limitations in the City's downtown core (sidewalk cafés, automatic teller machines, entrances to commercial and government buildings) a significant problem to the economic interests of the City. Moreover, the City has a compelling interest in protecting its residents, tourists and other visitors from aggressive panhandling and other panhandling which results in unwanted touching, impeding, intimidation and fear of persons who are constantly confronted with vocal requests or demands for monetary donations. Similarly, the City has a compelling interest in protecting motorists and pedestrians alike from the dangers presented by persons entering the roadway to solicit and interact with motorists who are engaged in travel.

The United States Supreme Court has sought "to dispel the notion that strict scrutiny is strict in theory but fatal in fact". *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 237, 115 S.Ct. 2097, 132 L. Ed. 2d 158 (1995). While strict scrutiny is a demanding task, the Supreme Court has recognized that cases do arise in which a speech restriction is narrowly tailored to serve a compelling interest. *Williams-Yulee v. Florida Bar*, 575 US 433, 444, 35 S.Ct. 1656, 1666 (2015).

The challenged regulations are narrowly tailored to further this compelling interest. As set forth above, the City permits panhandling and begging throughout all of the public places of the City, so long as it does not involve a direct vocal request or demand for a donation or money. Moreover, vocal requests or demands for the donation of money are also permitted throughout large portions of the City and are narrowly restricted to those areas where the City has a

compelling interest in allowing persons to travel freely or where the fear and intimidation of being approached and subjected to a vocal demand for the payment or donation of money can reasonably be expected to exist.  Right-of-way solicitations are prohibited only on the City's largest and most congested roadways.

## Conclusion

In accordance with the reasons and authorities stated above, the Defendant City requests that the Court enter an order denying Plaintiff's motion for preliminary injunction.


Dated: February 16, 2021

                                         Respectfully submitted,

                                         */s/Michael T. Burke*
                                         MICHAEL T. BURKE
                                         Fla. Bar No. 338771
                                         HUDSON C. GILL
                                         Fla. Bar No. 15274
                                         ***Counsel for Defendant***
                                         Johnson, Anselmo, Murdoch,
                                         Burke, Piper & Hochman, P.A.
                                         2455 East Sunrise Blvd., Suite 1000
                                         Fort Lauderdale, Florida 33304
                                         Telephone: 954-463-0100
                                         Burke@jambg.com
                                         Cardona@jambg.com
                                         Hgill@jambg.com
                                         Diaz@jambg.com

**CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on the 16th day of February, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of records or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                JOHNSON, ANSELMO, MURDOCH, BURKE,
                PIPER & HOCHMAN, P.A.
                *Counsel for Defendant*
                2455 East Sunrise Boulevard, Ste. 1000
                Fort Lauderdale, FL 33304
                Telephone: 954-463-0100

                BY: */s/Michael T. Burke*
                   MICHAEL T. BURKE
                   Fla. Bar No. 338771
                   HUDSON C. GILL
                   Fla. Bar No. 15274

**SERVICE LIST**

Dante Pasquale Trevisani
Florida Justice Institute
100 SE 2nd St., Suite 3750
Miami, FL 33131
305-358-2081
dtrevisani@floridajusticeinstitute.org

F. Jahra McLawrence
The McLawrence Law Firm
7101 W. Commercial Blvd., Ste. 4A
Tamarac, FL 33319
954-318-1376
info@mclawrencelaw.com

Mara Shlackman
Law Offices of Mara Shlackman, P.L.
757 SE 17th Street
PMB 309
Fort Lauderdale, FL 33316
954-523-1131
mara@shlackmanlaw.com

Raymond J. Taseff
Florida Justice Institute
3750 Miami Tower; 100 SE Second Street
Miami, FL 33131
305-358-2081
RTaseff@floridajusticeinstitute.org

Michael T. Burke, Esquire
Johnson, Anselmo, Murdoch, Burke,
Piper & Hochman, P.A.
2455 East Sunrise Boulevard, Ste. 1000
Ft. Lauderdale, FL 33304
954-463-0100
Burke@jambg.com
Cardona@jambg.com
Hgill@jambg.com
Diaz@jambg.com