UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 21-CV-60168-RKA

MARK MESSINA and
BERNARD MCDONALD,

    Plaintiffs,

vs.

CITY OF FORT LAUDERDALE,
FLORIDA, a Florida municipal corporation,

    Defendant.
_____/

**PLAINTIFFS' REPLY TO DEFENDANT CITY OF FORT LAUDERDALE'S RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Plaintiffs by and through undersigned counsel, submit their Reply to Defendant City of Fort Lauderdale's Response to Plaintiff's Motion for a Preliminary Injunction (DE 11).

The Supreme Court case of *Reed v. Gilbert*, 135 S. Ct. 2218 (2015), has "worked a sea change in First Amendment law." *Blitch v. City of Slidell*, 260 F.Supp.3d 656, 666 (E.D. La 2017). Following *Reed*, federal courts across the country have been virtually unanimous in striking down panhandling and roadside solicitation laws that single out and criminalize only those who ask for donations. *Reed* unquestionably controls this case. That the City makes only a single, passing reference to *Reed* in its Response speaks volumes on the merits of the City's opposition to Plaintiff's motion.

**Subject Matter Jurisdiction and Standing**

The City's first argument is that Plaintiffs lack standing and therefore this Court lacks subject matter jurisdiction. DE 11 at 3-7. The City's arguments are virtually identical to those

1

set forth in its Motion to Dismiss for Lack of Subject Jurisdiction, DE 12, and Plaintiffs hereby incorporate by reference their Response and Memorandum of Law in Opposition to Defendant City's Motion to Dismiss for Lack of Subject Matter Jurisdiction, *see* DE 20, filed the same day as the instant Reply.

**Section 16-82 is a Content-Based Restriction of Protected Speech that is Not Narrowly Tailored**

The City argues that §16-82 is content neutral and is thus not subject to strict scrutiny because it regulates merely the "manner" of the speech, not the content, and cites as support *Stardust 3007 LLC v. City of Brookhaven*, 899 F.3d 1164 (11th Cir. 2018), and *One World One Family Now v. City of Miami Beach*, 175 F.3d 1282 (11th Cir. 1999). DE 11 at 7. *One World* was decided before *Reed* and therefore has been abrogated by it. In *Stardust,* the court applied the Supreme Court's line of cases governing zoning restrictions designed to abate the negative secondary effects of sexually oriented businesses and held that it did not violate the First Amendment to regulate the manner in which sexual devices were commercially displayed. *Stardust*, 899 F.3d at 1173. This narrow doctrine has no application to the instant case.[1] Instead, this Court should follow the Supreme Court's authoritative pronouncement set forth in *Reed* and the cases applying it.

The City next argues that the law is content neutral because under §16-82(a), panhandling is not prohibited because people can still ask for a donation "by standing, sitting performing music, or singing with a sign or other indication that a donation is being sought but without approaching persons and making a vocal request for the donation." DE 11 at 7. But the Panhandling Ordinance *does* ban requests for donations—completely—at certain times and

---

[1] *See infra*, Balance of Harms section, for a further explanation.

places, and those locations are considerable in scope. *See* §16-82(b). And, as to the restrictions, again, panhandling is treated differently based on its message. Only those seeking a donation are precluded from speaking (though allowed to perform music or sing) while holding a sign to communicate their message. No one else is silenced from making a vocal request. Fort Lauderdale "may no more silence unwanted speech by burdening its utterance than by censoring its content." *Sorrel v. IMS Health Inc.*, 564 U.S. 552, 566 (2011). *See also Blitch*, 260 F.Supp.3d at 667, 673 (ordinance requiring only panhandlers to obtain a permit was content based). Section 16-82 is content-based and the City must meet the more rigorous standard of strict scrutiny.

"Content-based laws . . . are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interest." *Reed*, 135 S. Ct. at 2226. "Few laws survive" this exacting strict scrutiny standard, *Burk v. Augusta-Richmond County*, 365 F.3d 1247, 1255 (11th Cir. 2004), and §16-82 is no exception. The City argues that its interests are compelling because panhandling is "a significant problem to the economic interests of the City." DE 11 at 16.

As a matter of law, the City's interests in boosting local businesses and protecting people from uncomfortable speech in public places are not "compelling" state interests—a sparingly used category reserved for government objectives fundamental to democracy or national security. *See Burson v. Freeman*, 504 U.S. 191, 211 (1992) (right to cast a ballot free from intimidation and fraud was fundamental right); *Williams-Yulee v. Florida Bar*, 575 U.S. 433, 437, 457 (2015) (state had compelling interest in preserving public confidence in judiciary); *see also Holder v. Humanitarian Law Project*, 561 U.S. 1, 28 (2010) ("combatting terrorism is an urgent objective of the highest order"). No court ever has held that government may impose content-based restrictions on speech in traditional public fora to please tourists and business

3

interests. To the contrary, as courts have held, the First Amendment would mean little if the government could evade its protections based on the desire to remove from traditional public fora speech that tourists or customers of local businesses may wish to avoid. *See McCullen v. Coakley*, 573 U.S. 464, 476 (2014) (fact that individual using public streets and sidewalks may encounter an "uncomfortable message" is a "virtue, not a vice" of such traditional public fora); *ACLU of Nevada v. City of Las Vegas*, 466 F.3d 784, 797 n. 14 (9th Cir. 2006) ("[T]he interests of a private business or organization cannot trump the public's interest in free speech.").[2]

The City argues that §16-82 is narrowly tailored[3] for the same failed reasons it used to argue that it is content neutral: people can still panhandle but without making a vocal request at locations other than those near busy economic activity in the downtown core. *See* DE 11 at 8-9, 16-17. But the City never explains why the ban and restrictions in §16-82, which burden a substantial amount of speech, are necessary only for those who ask for donations and not for political candidates asking for votes, or religious advocates asking people to join their faith.

---

[2] Plaintiffs argued in their Motion as well that the City's interests, while significant and substantial, do not rise to the level of compelling interests required under the strict scrutiny test, citing supporting authority. DE 5 at 12-13. The compelling interest section of the City's Response does not address the authorities cited by Plaintiffs. DE 11 at 15-17.

[3] The narrow tailoring requirement differs for analysis of content-based and content-neutral restrictions on expression. For content-based restrictions, narrow tailoring requires that the law must be the least restrictive means of serving the government's interests. *McCullen*, 573 U.S. at 486. For content-neutral restrictions, narrow tailoring requires only that the law not "burden substantially more speech than is necessary to further the government's legitimate interests." *Id*. However, even this less demanding standard for content-neutral ordinances requires a showing that "alternative measures that burden substantially less speech would fail to achieve the government's interests, not simply that the chosen route is easier." *Id*. at 495. Courts will examine whether the government has forgone options that could have just as readily protected the interests without burdening plaintiffs' speech (e.g., enacting or enforcing existing laws providing civil or criminal penalties). *Id.* at 490-93. In the instant case, the City has not met its burden even under the less demanding standard for narrow tailoring of content-neutral ordinances.

Finally, the City does not address any of the numerous federal court decisions from across the country which, following *Reed*, have held that laws virtually identical to §16-82 violated the First Amendment on the grounds that they were content-based and did not survive strict scrutiny. *See* Plaintiff's Motion, DE 5 at 9-11.  Section 16-82 is equally unconstitutional and violates the First Amendment.

**Section 25-267 is a Content-Based Restriction of Protected Speech That is Not Narrowly Tailored**

Relying on *Cosac Foundation v. City of Pembroke Pines*, No. 12-62144, 2013 WL 5345817 (S.D. Fla. Sept. 21, 2013), a district court case that was decided two years before *Reed*, the City argues that the §25-267 is content neutral.  DE 11 at 10-13.  In *Cosac*, the court applied the then-existing test to determine whether the ordinance was content neutral: whether it is justified without reference to the content of the speech or adopted because of a disagreement with the message.  *Id.* at *11.  The court then stated, "Thus, even if a regulation incidentally affects some speakers or messages but not others, it nonetheless qualifies as content-neutral if it serves purposes unrelated to the content of the expression."  *Cosac,* 2013 WL 5345817 at *11. That test is dramatically different from the one set forth in *Reed* in that it focuses on the purpose or justification of the law, rather than under *Reed*, the content and language of the regulated message.[4]

*Reed* holds that a law is "content-based" if it "applies to particular speech because of the topic discussed or the idea or message expressed." 135 S. Ct. at 2227.  When deciding whether a

---

[4] The City also relies extensively on *Gresham v. Peterson*, 225 F.3d 899, 905-906 (7th Cir. 2000), which also applied the same obsolete test (content neutrality "turns on the government's justification for the regulation.").

challenged law is "content-based," a court must "consider whether a regulation of speech 'on its face' draws distinctions based on the message of the speaker." *Id.* The Court further instructed that [s]ome facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more subtle, defining regulated speech by its function or purpose." *Id.* at 2227. Nevertheless, "[b]oth are distinctions drawn based on the message a speaker conveys, and, therefore, are subject to strict scrutiny." *Id.*

Applying *Reed*, §25-267 is content-based and subject to strict scrutiny because it treats those who request donations from motorists differently than those who seek to communicate religious, political, or other ideological messages to the same motorists. On its face, §25-267 draws distinctions based on the message of the speaker and specifically targets those who ask for donations.

The City argues, as Pembroke Pines did in *Cosac*, that §25-267 is designed to promote pedestrian and traffic safety and that it applies equally to all those who ask for donations. DE 11 at 11-12. Plaintiffs agree that the City has a significant, although not compelling, government interest in traffic safety. But the City's argument skips the crucial first step in the content-neutrality analysis: determining whether the law is content neutral on its face. And it is not. It treats those who request a donation differently. "A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech." *Reed*, 135 S. Ct. at 2229.

The City argues that §25-267 is narrowly tailored because it applies only to arterial roadways. DE 11 at 12. But again, the City again fails to first address content neutrality and

6

never explains why the ban in §25-267 applies only to those who ask for donations.[5]  Assuming that traffic safety is a compelling government interest,[6] §25-267 is fatally underinclusive because it penalizes only certain types of activities that generate the alleged safety hazard, while leaving others unregulated.  It is also overinclusive because it bars those who solicit donations while holding signs from conducting their activities on all arterial roads and any City road, regardless of the location or traffic volume, and thus out of any proportion to the traffic hazards the City seeks to prevent.  Notably, the City addresses none of the numerous federal court decisions which have found roadway solicitation laws similar to §25-267 to be content based and have held that they failed strict scrutiny.  *See* DE 5 at 10-11.

Finally, the City argues that Plaintiffs are incorrect when arguing that §25-267(d) bars those who solicit donations along City road while holding a sign.  The City contends the provision only bars signs in violation of §47-22 of the City's Unified Land Development Regulations.  DE 11 at 13.  Plaintiffs maintain that the City's assertion is incorrect.  But regardless of whether the prohibition applies to all signs or just those in violation of §47-22, the fact remains the same:  the provision applies *only* to those who meet the definition of a roadway solicitor under §25-267(a) and consequently, those seeking donations are impermissibly singled out under *Reed* for differential treatment.  Section 25-267 is content-based and fails strict scrutiny.

**Irreparable Harm**

---

[5] The City never identifies how much of its roadway system is covered by the provision and its claim that there are other roads available does not address the adequacy of those locations, in terms of whether there is a sufficient target audience for those seeking donations.  *See McGraw v. Oklahoma City*, 973 F.3d 1057, 1079 (10th Cir. 2020) ("Just as in real estate, location matters in some constitutional questions.").

[6] As Plaintiffs point out in their Motion, traffic safety has not been held to be a compelling government interest. *See* DE 5 at 13.

The City's argument that Plaintiffs have not been irreparably harmed is merely a reiteration of the City's argument that Plaintiffs lack standing. DE 11 at 5-7, 13.  Plaintiffs will rely primarily on their briefing of standing in their Response and Memorandum of Law in Opposition to Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction.  *See* DE 20.  Additionally, Plaintiffs' allegations in the instant case that they have panhandled less frequently than they would have because they have received harassment and threats of arrest from City police while panhandling are sufficient to establish irreparable harm under the principle in *Elrod v. Burns*, 427 U.S. 347, 373 (1976).  DE 1, at ¶¶ 38, 40, 44, 45.  *See Towbin v. Antonacci*, 885 F. Supp. 2d 1274, 1277, 1283 (S.D. Fla. 2012) (in First Amendment challenge by 17-year-old to state statute imposing a criminal penalty on minors for political donations exceeding a certain dollar amount, court concluded plaintiff had shown irreparable harm under *Elrod*, where plaintiff had not made the donation because she was chilled from engaging in protected expression, and had shown a credible threat of prosecution); *see also Otto v. City of Boca Raton, Florida*, 981 F.3d 854, 860, 870 (11th Cir. 2020) (where plaintiffs met first requirement for a preliminary injunction in a First Amendment case – likelihood of success on the merits – they also met the remaining legal requirements, including irreparable injury, "as a necessary legal consequence" of the "holding on the merits")**.**

**Balance of Harm and Detriment to Public Interest**

The City argues that where the likelihood of success on the merits is uncertain, the burden is on the movant for a preliminary injunction to make a greater showing that the public interest is favored by an injunction. DE 11 at 14. This contention is based on the incorrect premise that the City's ordinances are likely to survive constitutional scrutiny. The City asserts that similar ordinances have been upheld in *Gresham v. Peterson*, 225 F.3d 899 (7th Cir. 2000)

8

and *Cosac Foundation, Inc. v. City of Pembroke Pines*, 2013 WL 5345817 (S.D. Fla. 2013), but as explained above, these decisions are no longer viable post-*Reed*.  *Compare Gresham*, 225 F.3d at 903, 906-907, (upholding ordinance that permitted passive panhandling that did not involve a vocal request for an immediate donation), with *Norton v. City of Springfield, Illinois*, 806 F.3d 411, 411-413 (7th Cir. 2015) (concluding that an ordinance precluding vocal requests for immediate donations, but allowing signs requesting money and oral requests for donations at a later time, was a content-based restriction on speech under *Reed*, and remanding for entry of injunction in favor of the plaintiffs).  In the instant case, Section 16-82 bars vocal requests for immediate donations but permits signs requesting donations and is likely to be found unconstitutional under *Reed* and its progeny.  *See, e.g., Homeless Helping Homeless, Inc. v. City of Tampa*, 2016 WL 4162882 at \*\*2, 4, 5 (M.D. Fla. 2016) (court followed *Reed* to conclude that an ordinance that precluded solicitation at ATMs, sidewalk cafes, and other locations, and which defined solicitation to exclude those persons who only held signs, was a content-based restriction that did not survive strict scrutiny).

      The City next seeks to invoke the secondary effects doctrine to contend that Plaintiffs are unlikely to prevail on the merits.  DE 11 at 15.  This doctrine applies in cases involving the regulation of adult entertainment establishments, which are at the margins of First Amendment protection.  *See Boos v. Barry*. 485 U.S. 312, 320 (1988) (secondary effects were "almost unique to theaters featuring sexually explicit films"); *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 566 (1991) (nude dancing was expressive conduct at the "outer perimeters" of the First Amendment). The case relied upon by the City, *Stardust, 3007 LLC v. City of Brookhaven*, 899 F.3d 1164, 1169 (11th Cir. 2018), similarly involves regulation of a sexually oriented business. In *Boos*, the Court declined to apply the secondary effects doctrine to an ordinance that prohibited the display

9

of signs near foreign embassies that brought foreign governments into "public odium" or "public disrepute," and found the ordinance to be a content-based restriction on speech. 485 U.S. at 315, 320-321. In the instant case, under *Reed* and subsequent decisions, Sections 16-82 and 25-267, which single out speech soliciting donations for different treatment than other speech, are likewise content-based, and the narrow secondary effects doctrine does not apply to save these ordinances from being found unconstitutional.

**City's Compelling Interest**

The City's final argument is that in the event that Sections 16-82 and 25-267 are found to be content-based, the City will still be able to satisfy the strict scrutiny standard and demonstrate that the ordinances are narrowly tailored to serve a compelling interest. DE 11 at 15-17. These points have already been addressed in the arguments above concerning the content-based nature of Sections 16-82 and 25-267.

## CONCLUSION

Based on the above argument and authorities, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion for a Preliminary Injunction and immediately enjoin the City and its agents from enforcing Sections 16-82 and 25-267 of the Fort Lauderdale Municipal Code.

Respectfully submitted,

Dante P. Trevisani
Florida Bar No. 72912
E-mail: *dtrevisani@floridajusticeinstitute.org*
Ray Taseff
Florida Bar No. 352500
E-mail: *rtaseff@floridajusticeinstitute.org*
Florida Justice Institute, Inc.
100 S.E. 2nd Street
3750 Miami Tower
Miami, Florida 33131-2309
305-358-2081

        305-358-0910 (Fax)

        By:    *s/Ray Taseff*
                   Ray Taseff

        Mara Shlackman
        Florida Bar No. 988618
        Email: mara@shlackmanlaw.com
        Law Offices of Mara Shlackman, P.L
        757 SE 17th Street, PMB 309
        Fort Lauderdale, Florida 33316
        954-523-1131
        954-206-0593 (Fax)

        F.J. McLawrence
        Florida Bar No. 624527
        Email: info@mclawrencelaw.com
        The McLawrence Law Firm
        633 S. Federal Highway; Ste. 200-B
        Fort Lauderdale, Florida 33301
        954-318-1376
        954-616-0566 (Fax)

        **Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that I electronically filed today, March 9, 2021, the foregoing with the Clerk of the Court using the CM/DE system, which will send notification of such filing to all persons registered to receive electronic notifications for this case, including all opposing counsel.

        By:    *s/Ray Taseff*
                   Ray Taseff